J-S23029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: H.A.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.L.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3187 EDA 2025 |

Appeal from the Decree Entered November 10, 2025
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2025-A0100

BEFORE:   LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 17, 2026**

G.L.C. (Father) appeals from the orphans' court's decree granting the petition filed by the Montgomery County Office of Children and Youth (OCY), and terminating Father's parental rights to his biological daughter, H.A.Y. (Child), born in August 2023.[1]  After careful review, we affirm.

Mother and Child came to the attention of OCY after a referral was made alleging Mother and Child had tested positive for numerous illicit substances

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's biological mother, L.Y. (Mother), consented to Child's adoption on May 27, 2025.  **See** Petition for Confirmation of Custody, 7/22/25, Attachment (Consent of Birth Parent); **see also** 23 Pa.C.S.A. § 2711 (Consents necessary to adoption).  On November 10, 2025, the orphans' court terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2504 (detailing an alternative procedure for termination of parental rights (TPR) "upon expiration of the time periods under section 2711 …."manual).  Decree, 11/10/25.  Mother is not a party to the instant appeal.

upon Child's birth. Dependency Petition, 11/9/23, at 4; **see also id.** at 5 (OCY indicating Child's biological father was unknown to OCY on the date it filed the dependency petition). On December 1, 2023, following a hearing, the orphans' court adjudicated Child dependent, transferred legal and physical custody of Child to OCY, and placed Child in the care of Child's maternal aunt, J.Y. (foster mother). Order, 12/1/23, at 2; **see also id.** (ordering Mother to disclose Father's identity and contact information to OCY); N.T., 11/10/25, at 11 (OCY caseworker Kyia Worthem (Ms. Worthem) testifying that Mother disclosed Father's identity and, on October 3, 2024, paternity testing confirmed that Father is Child's biological father).

The juvenile court[2] conducted permanency review hearings in March, May, August, and November 2024; and February and May 2025. The juvenile court consistently found that Father had not complied with, or only minimally had complied with, the family's permanency plan. The juvenile court consistently made the same findings concerning Father's progress toward alleviating the circumstances that necessitated Child's placement.

On July 22, 2025, OCY filed a petition seeking termination of Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b). The matter proceeded to a hearing on November 10, 2025. Father, who

---

[2] The Honorable Todd Eisenberg presided over most of Child's dependency proceedings. The Honorable Lois E. Murphy presided over Father's TPR proceedings.

was incarcerated at the state correctional institution in Laurel Highlands,[3] appeared by video, and was represented by court-appointed counsel.[4] Child, who did not appear, was represented by counsel.[5] OCY presented the testimony of Ms. Worthem, and submitted (without objection) numerous exhibits.[6] Father testified on his own behalf.

---

[3] At the TPR hearing, the parties stipulated that Father had been incarcerated since May 1, 2024. N.T., 11/10/25, at 19-20.

[4] Sean E. Cullen, Esquire (Attorney Cullen), represented Father at the TPR hearing.

[5] Child's counsel served as both legal counsel and guardian *ad litem* (GAL). *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020) ("[W]here an orphans' court has appointed a GAL/Counsel to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* whether the orphans' court made a determination that those interests did not conflict."). Child's counsel represented that she "did not perceive a conflict between [Child's] best interests and legal interests." N.T., 11/10/25, at 5; *see also id.* at 5 (Child's counsel indicating that Child "is two years old, and [] could not articulate her preferred outcome …."). At the conclusion of the TPR hearing, the orphans' court found that no conflict existed between Child's best and legal interests. N.T., 11/10/25, at 73.

We note that "[p]erforming the required conflict determination … after the [TPR] hearing already began … is inconsistent with the procedure described by *K.M.G.*[, 240 A.3d at 1236 (holding that 'the orphans' court must determine whether counsel can represent the dual interests **before** appointing an individual to serve as GAL/Counsel for a child.' (emphasis added))]." *Interest of M.K.L.*, 354 A.3d 42, 49 n.3 (Pa. Super. 2026). However, "because [Child was] represented at the hearing," and the orphans' court made a no-conflict finding at the TPR hearing, "we decline to emphasize form over substance in this case." *Id.*

[6] The orphans' court admitted as evidence, *inter alia*, the dependency court record, family service plans, and several of Father's criminal docket sheets. N.T., 11/10/25, at 7-8.

Ms. Worthem testified that Father's goals, established in his family service plans, "were to maintain housing, maintain employment, stabilize his mental health, and to remain recovered from substance abuse." N.T., 11/10/25, at 13. Ms. Worthem testified that, throughout the life of the dependency case, Father failed to supply OCY with evidence that he had addressed any of his permanency goals. *Id.* at 27-28.

Ms. Worthem testified that, throughout Child's entire life, Father visited Child on only one occasion, in January 2024. *Id.* at 12, 23, 26. *But see id.* at 41 (Father testifying that he visited Child on some occasions in September 2023). Ms. Worthem explained that Father submitted a urine test on that date, which indicated positive results for cocaine, marijuana, benzodiazepines, and methamphetamine. *Id.* at 14, 24. According to Ms. Worthem, Father told her that he did not visit Child from January 2024 to the date of his incarceration (in May 2024) because he would have tested positive for illicit substances. *Id.* at 23.

Ms. Worthem testified that Father told OCY that "he had therapy and a family coach[,]" but he did not supply OCY with the names of his providers. *Id.* at 24-25. Ms. Worthem explained that Father never provided OCY with his contact information, and that OCY was unable to locate Father between January and May of 2024. *Id.* at 15, 25; *see also id.* at 25 (Ms. Worthem testifying that Father did not advise OCY that he was incarcerated, and that she discovered that he was in prison through her own research).

Ms. Worthem stated that though Father had provided her with a letter for foster mother, thanking foster mother for taking care of Child, Father had never, himself, cared for Child. *Id.* at 29-30. Ms. Worthem confirmed that Father had never attended any of Child's medical appointments, or provided Child with clothing, cards, gifts, or financial support. *Id.* at 30.

Regarding Child's current placement, Ms. Worthem testified that Child had been residing with foster mother and foster mother's fiancée (collectively, foster parents) since Child was removed from Mother's care, on December 1, 2023. *Id.* at 16. Ms. Worthem opined that Child "is doing really good in [foster mother's] home[,]" that Child is "bonded to [] foster parents[,]" and that foster parents were meeting Child's needs. *Id.* at 17. Ms. Worthem testified that foster parents were adoptive resources for Child, and opined that the permanency that adoption would provide for Child was in Child's best interests. *Id.*

Father testified that he had been using illicit substances for approximately 20 years. *Id.* at 44. Father acknowledged that he was first incarcerated in 1989, and that since then, the longest he had remained out of prison was "about a year … in 2007." *Id.*

Father testified that his next parole hearing was scheduled for April 2026, and that if he was not released, his sentence was set to "max out" on May 1, 2027. *Id.* at 35; *see also id.* at 42 (Father acknowledging that he was "incarcerated on about four dockets [for] parole violations[.]"). Father

testified that, while incarcerated, he completed drug and alcohol, mental health, and anger management programs. ***Id.*** at 36-37; ***see also id.*** at 66 (the parties stipulating that Father additionally completed the "Read to Your Child Program").

Father testified that he "made video CDs for [Child], for her to see [Father] reading her a book." ***Id.*** at 37. ***But see id.*** (Father testifying, "I never give them to the OCY people because I don't believe they would have ever given them to [Child] because of [foster mother]."). Father testified that his mother (paternal grandmother) has gifts for Child, and a room for Child in paternal grandmother's house. ***Id.*** Father testified that he did not give Child the gifts paternal grandmother purchased for Child because "we don't think that [Child] will receive them." ***Id. But see id.*** at 59 (Ms. Worthem testifying that Father never expressed any concerns to OCY that Child would not receive gifts if he attempted to send them to Child).

According to Father, he had not willfully refused to visit Child. ***Id.*** at 39. Father testified that "[t]here w[ere] a lot of times where I was lied to by [Mother] about a whole lot of stuff. …. I wasn't told when I could come visit …." ***Id.*** at 39. Father suggested that paternal grandmother was a "potential adoptive resource" for Child.[7] ***Id. But see id.*** at 56 (Ms. Worthem testifying

_____

[7] Paternal grandmother did not appear at the TPR hearing. Father testified that "[i]f [paternal grandmother] knew that she could come," she would have attended. N.T., 11/10/25, at 54. However, Father's counsel represented to
*(Footnote Continued Next Page)*

- 6 -

that paternal grandmother advised OCY "that she cannot be a permanent resource for [Child] …. [Paternal grandmother] stated she would just want to be in [C]hild's life, have visits with her, and get her on the weekends.").

Father agreed that he was not in a position to "provide for [Child's] emotional or physical needs[,]" and that he did not have a bond with Child. *Id.* at 53. Father further agreed that foster parents have provided a safe and loving environment for Child, and were attending to all of Child's needs. *Id.* at 48.

At the conclusion of the hearing, the orphans' court terminated Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b). Father timely filed a notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement. On December 19, 2025, the orphans' court filed a Rule 1925(a) opinion, which directed this Court to the analysis it set forth on the record at the TPR hearing.[8]

_____

the orphans' court that he had "left a message" for paternal grandmother advising her that she could attend the hearing. *Id.*

[8] Attorney Cullen did not file an appellate brief on Father's behalf. On February 20, 2026, we issued an order directing Attorney Cullen to file Father's brief late, "or to show cause as to why he should not be found to have abandoned his client." Order, 2/20/26. Attorney Cullen failed to comply with our order. Therefore, on March 10, 2026, we vacated Attorney Cullen's appointment as Father's counsel, directed the orphans' court to appoint Father new counsel, and vacated the briefing schedule pending the appointment of new counsel. Order, 3/10/26. The orphans' court complied by appointing Matthew Quigg, Esquire (Attorney Quigg), to represent Father in this appeal. Attorney Quigg timely filed Father's appellate brief.

Father raises the following issues:

I. Whether the [orphans'] court committed an error of law and/or abuse of discretion when it held that [OCY] had proven by "clear and convincing evidence" that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S.[A.] § 2511(a)(1), (a)(2), and (a)(8)?

II. Whether the [orphans'] court committed an error of law and/or abuse of discretion when it held under 23 Pa.C.S.[A.] § 2[5]11(b) that the developmental, physical, and emotional needs and welfare of [Child] would be best served by the termination of [] Father's parental rights?

Father's Brief at 4 (original brackets omitted; capitalization modified).

We review the termination of parental rights for an abuse of discretion.

*See Interest of N.A.S.*, 338 A.3d 191, 196 (Pa. Super. 2025).

Appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. Where the orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and

child.  As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id.* at 196-97 (internal brackets and citation omitted); *see also In re Adoption of C.P.D.*, 324 A.3d 11, 24 (Pa. Super. 2024) ("[T]he trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact." (citation and brackets omitted)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (citation omitted).  This Court need only agree with the trial court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Int. of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

In his first issue, concerning Section 2511(a)(1), Father argues that OCY failed to prove that he acted with the settled intent to relinquish his parental claim to Child. Father's Brief at 9. Father claims that, to the contrary, the fact that he had completed various programs during his incarceration evidenced Father's intent "to be a parent to [] Child[.]" *Id.* Father further argues that "taking the steps afforded [to] him during his incarceration[] displayed an 'affirmative demonstration of parental devotion, … [by] taking and maintaining a place of importance in [C]hild's life.'" *Id.* at 10 (internal brackets omitted; quoting *In re G.P.-R.*, 851 A.2d 967, 976 (Pa. Super. 2004)).

OCY counters that the evidence

established that Father failed to perform his parental duties [throughout] all of Child's life. Father has never provided Child with shelter. Father has not provided Child with regular and consistent care, financial support, clothing, food, and all of the essentials [C]hild needs. Father failed to maintain a significant role in Child's life, including visiting Child, whether he was incarcerated or not. The [orphans' c]ourt properly found that [OCY] proved Father has failed to perform parental duties for a period in excess of six months preceding the filing of the [TPR petition].

OCY Brief at 11.

Instantly, we address Father's Section 2511(a) challenge pursuant to subsection (a)(1), which provides as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

- 10 -

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

To satisfy Section 2511(a)(1), the petitioner "must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *See Interest of C.S.*, 327 A.3d 222, 237 (Pa. Super. 2024) (citation omitted); *see also In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) ("Section 2511[(a)(1)] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties." (citation omitted; emphasis in original)).

We have explained that in applying Section 2511(a)(1),

> [t]he court should consider the entire background of the case and not simply … mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re Adoption of A.C.*, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citations and paragraph break omitted). However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates

the timeframe is the "most critical period for evaluation" of a parent's conduct.

***In re Adoption of L.A.K.***, 265 A.3d 580, 592 (Pa. 2021).

Regarding the definition of "parental duties," our Supreme Court has explained that

> [o]ur courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in a child's life. Fortitude is required, as **a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities**.

***Id.*** (citations, some quotation marks, and brackets omitted; emphasis added).

Further, in the context of a Section 2511(a)(1) challenge, this Court has recognized that

> [w]here a parent is incarcerated, the fact of incarceration does not, in itself, provide grounds for the termination of parental rights. However, **a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his … child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his … children**.
>
> Where a non-custodial parent is facing termination of his … parental rights, the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial

- 12 -

parent and his … child.  **Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances**.  A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

*In re B.,N.M.*, 856 A.2d 847, 855-56 (Pa. Super. 2004) (internal citations omitted; emphasis added).  The *B.,N.M.* Court further stated that "a parent's basic constitutional right to the custody and rearing of his … child is converted, upon the failure to fulfill his … parental duties, to the child's right to have proper parenting and fulfillment of … her potential in a permanent, healthy, safe environment." *Id.*

At the conclusion of the TPR hearing, the orphans' court determined termination pursuant to Section 2511(a)(1) was warranted, explaining as follows:

> Based on all the facts that [the orphans' court has] considered, … [OCY] has proven by clear and convincing evidence that [F]ather has failed or refused to perform parental duties for … virtually all of [Child's] life, from … when she [was] exposed to substances following birth, and through the period that she was in a safety plan, through the period that she's been in foster care with [foster parents], and until the present.
>
> ….
>
> … [D]uring the period that [Father] was not incarcerated, before May 1st of 2024, … [Father] only had the one or two visits with [Child] that [Father] testified to, and he was not a consistent presence in [Child's] life. [Father] did not seek to maintain a place of importance in her life, and during the critical period, from January of 2024, when OCY had custody [of Child] and reached out to [Father] to set up visits so that they could encourage … the formation of a bond and place of importance in [Child's] life …, [Father] did not respond and did not set up or participate in any

- 13 -

visits from January [] of 2024 … until May [] of 2024[,] when [Father] was incarcerated.

This is not a case that is limited to the fact that [Father] has been incarcerated. [Father] had a significant period of time [where] he was not incarcerated, and during that time, he did not take the steps necessary to parent [C]hild, to provide for [C]hild, or to maintain a place of importance in her life, and to arrange for visits with [C]hild.

Therefore, under Section 2511(a)(1) …, [the orphans' court] find[s] that during the … six-month period prior to the filing of the [TPR] petition, and looking backwards at [Child's] life—her almost two years of life before the fling of the [TPR] petition—[Father] has failed or refused to perform parental duties. He has not met [Child's] needs. He has not provided for her subsistence. He has not provided her [with] a home. He has not provided her clothing and financial support, and he has not done everything that he can to take a place of importance in [Child's] life ….

N.T., 11/10/25, at 82-85.

The orphans' court's factual findings are supported by the record, and we agree with its legal conclusion. *See Interest of N.A.S.*, 338 A.3d at 196. Our review confirms that in the six months preceding the filing of the TPR petition, Father performed **no** parental duties. *See* 23 Pa.C.S.A. § 2511(a)(1). Although Father participated in various programs during his incarceration, the record contains no evidence that Father availed himself of any prison resources to "foster a continuing close relationship with" Child. *In re B.,N.M.*, 856 A.2d at 855. Moreover, the orphans' court appropriately considered the "entire background of the case[,]" *In re Adoption of A.C.*, 162 A.3d at 1129, and found that the evidence established that, throughout Child's entire life, Father performed virtually no parental duties. N.T.,

11/10/25, at 82-85. Accordingly, Father's first issue is without merit and entitles him to no relief.[9]

In his second issue, Father argues the orphans' court erred by finding OCY met its burden of establishing that termination of Father's parental rights was warranted pursuant to Section 2511(b). Father's Brief at 13. Father claims that the orphans' court "failed to consider whether a natural parental bond existed between Father and Child[,] and whether the termination would destroy this necessary and beneficial bond." *Id.* According to Father, "[t]he record is clear that a strong, loving, and beneficial bond exists between Father and [] Child." *Id.* at 14.

When the trial court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

---

[9] Because we agree with the orphans' court that OCY met its burden with respect to Section 2511(a)(1), we need not address Father's claim that termination was inappropriate pursuant to Section 2511(a)(2) and (8). *See Int. of M.E.*, 283 A.3d at 830.

- 15 -

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." ***Interest of K.T.***, 296 A.3d 1085, 1105 (Pa. 2023) (citation omitted). Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** at 1104 (citation omitted). However, "the parental bond is but one part of the overall subsection (b) analysis." ***Id.*** at 1113.

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

***Id.*** (footnote and citations omitted); ***see also In re T.S.M.***, 71 A.3d 251, 269 (Pa. 2013) (stating that "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly.").

Instantly, contrary to Father's assertion, the orphans' court expressly found that no parental bond exists between Father and Child. N.T., 11/10/26, at 88. The orphans' court provided the following Section 2511(b) analysis:

> [The orphans' court] conclude[s] that there is no parental bond between [F]ather and [C]hild, and that the emotional needs and welfare of [C]hild can best be met by termination of [F]ather's parental rights. [Child] will not suffer a detriment as a result of the termination of the parental rights of [F]ather, whom she does not know and [with] whom she does not have a bond.

- 16 -

By contrast, [the court] find[s] that the testimony established that [] foster mother has a loving and caring relationship [with Child], and that[,] in [foster parents'] home, [Child's] needs are being met, and a bond has been established.

*Id.*

The orphans' court's findings are supported by the record, and we discern no error in its legal conclusion. ***See Interest of N.A.S.***, 338 A.3d at 196. At the TPR hearing, Father admitted that he has no bond with Child, and that foster mother provided Child with a safe and loving home. N.T., 11/10/25, at 48, 53. Father's claim on appeal that the orphans' court improperly failed to consider whether a bond exists between Father and Child is belied by the record. ***Id.*** at 88. Accordingly, Father's second issue is meritless and entitles him to no relief.

Decree affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/17/2026